IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANN J. CARGO, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 2:07cv1065-CSC |
| | ) |
| THE STATE OF ALABAMA, | ) |
| BOARD OF PARDONS & PAROLE, | ) |
| | ) |
|    Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Plaintiff Ann J. Cargo ("Cargo"), a white female, brings this action against her employer the State of Alabama Board of Pardons and Parole ("Board") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"),[1] alleging that she was discriminated against and subjected to a hostile work environment

---

[1] The plaintiff also purports to invoke this Court's jurisdiction pursuant to 42 U.S.C. § 1983. No substantive rights are created by Section 1983; it merely provides a remedy for deprivations of federal rights created elsewhere. *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030 (11th Cir. 1987). Of course, Title VII contains its own jurisdictional and remedial provisions, and does not rely on 42 U.S.C. § 1983.
    Any claim that Cargo purports to raise pursuant to 42 U.S.C. § 1983 would be barred by the doctrine of sovereign immunity. The law is well established that the State of Alabama, Board of Pardons and Paroles, is absolutely immune from suits for monetary damages. *Papasan v. Allain*, 478 U.S. 265 (1986) (The Eleventh Amendment to the Constitution of the United States proscribes suits at law and in equity against a state, its agencies or departments unless the state consents to be sued). While the courts have recognized two exceptions to Eleventh Amendment immunity, neither exception applies to the facts of this case. Because Cargo names only the State of Alabama, Board of Pardons and Paroles, as a defendant in this action, and she seeks only monetary damages against it, any § 1983 claim against this defendant would be barred by the doctrine of sovereign immunity.

based on her race, sex and age.² Cargo names the Board as the sole defendant in this action.

Cargo seeks damages and attorney's fees. The court has jurisdiction of the plaintiff's claims pursuant to its federal question jurisdiction, 28 U.S.C. § 1331, and the jurisdictional grant in 28 U.S.C. § 2000e-5. Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

This action is now pending before the court on the Board's motion for summary judgment. Cargo has filed a response in opposition to the motion. The court has carefully reviewed the defendant's motion, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials. Based on that review, the court concludes that Board's motion for summary judgment should be granted.

## II. THE SUMMARY JUDGMENT STANDARD

Under FED.R.CIV.P. 56(c) summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).³ The

---

² Cargo's age discrimination claim against the Board is, of course, barred by the Eleventh Amendment. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000). *See also Hillemann v. Univ. of Central Fla.*, 167 Fed. Appx. 747, 2006 WL 122430 (11th Cir. 2006) (No. 04-15153); *Stephens v. Ga. Dep't of Transp.*, 134 Fed. Appx. 320, 2005 WL 1274481 (11th Cir. 2005) (No. 04-14222).

³ In *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), the court stated:

[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by . . .

party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324. If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also* FED.R.CIV.P. 56(e) ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The non-movant "must do more than simply

---

affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial . . . We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves . . .

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995); *Peppers v. Coates*, 887 F.2d 1493 (11th Cir. 1989). However, *evidence* presented by the non-movant must be believed and all justifiable inferences must be drawn in favor of the non-movant.[4] *Anderson*, 477 U.S. at 255. After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c).

### III. DISCUSSION

### A. FACTS[5]

Plaintiff Ann Cargo is employed by the State of Alabama, Board of Pardons and Paroles. In July 2002, she was promoted to Director of Field Services. (Pl's Dep. at 975-76.) Eddie Cook came to the Central Office in 2002 in the Pardons Unit of Field Services. At that

---

[4] "[W]hat is considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

[5] Viewed in the light most favorable to Cargo and drawing all reasonable inferences in her favor, the following facts are treated as undisputed for the purposes of summary judgment.

time, Cook targeted Cargo "as the person he had to discredit." (Pl's E.E.O.C. charge). At some point, Cook accused Cargo of showing favoritism in the assignment of cars. As a result, Cargo voluntarily turned the task of vehicle assignment over to Cook. (*Id*.)

In July 2004, Eddie Cook was promoted to Director of Field Services, a position comparable to Cargo's. (*Id*.). Their working relationship continued to deteriorate. For example, after Cook's promotion, the clerical staff in the Field Services office argued over the office thermostat setting. Although everyone involved finally agreed to a setting, after the thermostat was changed, Cook accused Cargo of changing it. (*Id*. at 100). No action was taken against Cargo, but she was angered about Cook's accusation. (*Id*. at 103).

In August 2004, Steven Green filed a grievance against Cargo and asked to be placed under Cook's supervision.[6] (*Id*. at 364-65). Although Cargo admitted that she was having "some issues" at that time, she believes that Green request to be moved from her supervision was just "to make Cook look good." (*Id*. at 365 & 107-09). In October 2004, Charles Strowd filed a grievance against Cargo complaining that Cargo had spoken to him in an unprofessional manner.[7] (*Id*. at 110-113 & 368). Although Cargo concedes that she was unprofessional when she "probably did tell him to shut up," she believes Strowd filed the grievance because he was supporting "[a]nybody but [her] for the Assistant Executive Director position." (*Id*. at 114 & 438). On October 26, 2004, Cargo called Bobby Moseley,

---

[6] The parties refer to Green by name but do not identify for the court his position.

[7] Again, while the parties reference Charles Strowd by name, they do not identify his position.

a subordinate employee, a bitch. (*Id*. at 418). As a result of this incident, Cargo volunteered to attend an employee assistance program. (*Id*. at 373).

In August 2005, Cook was promoted to Assistant Executive Director, and became Cargo's supervisor. (*Id*. at 157 & 977). According to Cargo, her problems with Cook began in 2006. (*Id*. at 31 & 58). Cargo believed that Cook was "lobbying against her and trying to make her "look bad." (*Id*. at 91-92). "I think he asked everyone that he could to help him in his endeavors to make other people look bad and make himself look good. . ." (*Id*. at 94).

The culmination for both Cargo and Cook came in the form of disciplinary action in 2006. In May 2006, Mike Pitsis, a probation and parole officer from Huntsville, Alabama, was recommended for termination. Pitsis's supervisor notified Cargo, his supervisor, of the proposed termination. Cargo in turn was supposed to notify Cook. Although Cargo attempted to notify Cook, she was unsuccessful so she contacted Cook's supervisor Bill Segrest, the Executive Director. Segrest then scheduled a termination hearing for five days later.[8]

Cook did not find out about the proposed termination until the day of the scheduled hearing. Consequently, on June 8, 2006, Cook initiated disciplinary charges against Cargo for failing to follow the proper chain of command with regard to the Pitsis termination. Pitsis's mother is the academic advisor of Board member Verlinda Weatherly's son at the University of Alabama, Huntsville. According to Cargo, this relationship is the root cause

---

[8] The termination notice was prepared on a Wednesday and the termination hearing was set for the following Tuesday. The preceding Monday was a holiday.

of the conspiracy between Weatherly and Cook, the result of which was the disciplinary action against her by Cook.[9] (Pl's Dep. at 77-78). Cargo admits that Cook followed the proper procedure to institute the grievance, but believes the grievance was indicative of the conspiracy with Weatherly and his "problem" with white women. (*Id*. 136 & 163). The grievance was resolved in Cargo's favor and it had no effect on her pay or career.[10] (*Id*. at 639, 647-48).

Regardless of her difficulties, Cargo has consistently received favorable evaluations and merit pay raises. (*Id.* at 647-48, 680-686, 938). At her request, Cargo transferred to another position in July 2008 and is no longer supervised by Cook. (*Id*. at 62).

Cargo filed this action on December 6, 2007.

## B. HOSTILE WORK ENVIRONMENT CLAIM

To establish a hostile work environment based on discriminatory animus, the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" *Corbitt v. Home Depot, U.S.A., Inc.*, ___ F.3d ___, ___, 2009 WL 1981383, *10 (11th Cir. 2009) (No. 08-12199).

In opposing the defendant's motions for summary judgment, Cargo alleges that Cook engaged in the following activities which demonstrate racial, gender and age animus

---

[9] "I think it was more like "I'll take care of yours if you take care of mine."' (*Id.*) Other than her own unsupported opinion, Cargo offers no evidence in support of this conspiracy theory.

[10] Both parties spend an inordinate amount of time and paper on Pitsis's termination and Cargo's subsequent disciplinary action. It is undisputed that Cook followed the appropriate procedure to charge Cargo and Cargo was subsequently exonerated. Cargo makes no allegation that she was denied due process during the disciplinary process.

7

sufficient to sustain a hostile work environment claim. According to Cargo, Cook (1) engaged with Weatherly in a "campaign" to "discredit"her and made her "look bad;" (2) pitted black employees against white employees; (3) initiated disciplinary charges against her; (4) encouraged other employees to file grievances against her; (5) pulled an employment register the day before the test to encourage her to retire;[11] and (6) generally was "short, speaking harshly, not listening, [and] being stubborn." (Pl's Dep. at 797). Although Cargo complains that Cook targeted her in March 2002, she contends that the harassment escalated between June 2006 and July 2008. Cargo argues that her work conditions were sufficiently severe to constitute a hostile work environment.[12]

A plaintiff establishes a prima facie case of hostile work environment harassment claim by showing: (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome harassment; (3) that the harassment was based on her race, gender or age; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatory abusive working environment; and (5) a basis

---

[11] Cargo's argument regarding this incident borders on the ludicrous. According to Cargo, the Board pulled an employment register the day before the test to create a new register. In her opinion, pulling this register was somehow evidence of the general campaign to discredit her and encourage her to retire. It is undisputed that there was a vacant position at the time the Board requested the employment register. However, Cargo contends that it was the Board's intention to force her to retire so they could promote 2 employees. She fails to explain how pulling the register would "force" her to retire. Moreover, she admits that nobody told her that the pulling the register had anything to do with her; she was simply speculating about that. (*Id*. at 849).

[12] The court notes that this is not a situation in which derogatory slurs and offensive comments were so "commonplace, overt and denigrating" that a reasonable jury could conclude that "they created an atmosphere charged with [discriminatory] hostility." *See generally Edwards v. Wallace Cmty Coll.*, 49 F.3d 1517, 1521-22 (11th Cir. 1995); *E.E.O.C. v. Beverage Canners, Inc.,* 897 F.2d 1067, 1068 (11th Cir. 1990).

for holding the defendant liable. *See generally Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999)(*en banc*). A plaintiff must establish that the harassment is sufficiently severe or pervasive "to ensure that courts and juries do not mistake ordinary socializing in the workplace . . . for discriminatory 'conditions of employment'" and to ensure that the courts are not creating a "general civility code." *Gupta v. Fla Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000). To be successful, "a plaintiff must establish not only that she subjectively perceived the environment as hostile and abusive, but also that a reasonable person would perceive the environment to be hostile and abusive." *Id.* Finally, "[t]o constitute an actionable hostile environment, conduct must be objectively sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). It is the fourth element – conduct sufficiently severe or pervasive to alter the conditions of employment – "that tests the mettle of most . . . harassment claims." *Gupta,* 212 F.3d at 583.

> Workplace conduct is not measured in isolation; instead, "whether an environment is sufficiently hostile or abusive"must be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance' and whether it unreasonably interferes with an employee's work performance.'"

*Clark County Sch.Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001). *See also Mendoza*, 195 F.3d at 1246 (citations omitted); *Johnson v. Booker T. Washington Broad. Serv., Inc.,* 234 F.3d 501 (11th Cir. 2000); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997)

9

(citing *Harris*, 510 U.S. at 23).

Viewing the evidence in the light most favorable to the plaintiff, the court concludes that Cargo has not established a prima-facie race, gender or age-based hostile work environment claim because the record contains no evidence that the conduct she was allegedly subjected to was sufficiently severe or pervasive to affect a term or condition of her employment and create a hostile or abusive work environment.[13] Applying the requisite factors to the totality of these events, the court concludes that the plaintiff has failed to establish a genuine issue of material fact regarding whether the conduct at issue was objectively sufficiently severe or pervasive to alter the terms and conditions of her employment and create a hostile or abusive working environment. Cargo complains primarily about conduct that occurred over a two year period. Even if the court assumed that conduct over a two year period weighs in favor of Cargo,[14] the lack of severity of the incidents militate against a finding that the incidents were sufficiently severe or pervasive to alter her work environment. Cargo presents no evidence that she was hindered in her ability to do her job as a result of Cook's conduct. Cargo complains about sporadic and stray conduct over

---

[13] The defendant argues that the plaintiff's claims are barred by the doctrine of laches as well as her failure to utilize the Board's administrative complaint procedure . The defendant also contends that Cargo's hostile work environment claim is time barred. Because the court concludes that the plaintiff is not entitled to relief on the merits of her claims, the court pretermits discussion of these specific defenses.

[14] Even if the plaintiff were to show frequent conduct, "the frequency . . . does not compensate for the absence of the other factors." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1248 (11th Cir. 1999).

two years.[15]  She is unable to "give examples because most of the stuff was under the table," that, of course, begs the question of how this conduct could alter her work environment. (Pl's Dep. at 87).  Furthermore, Cargo admits that none of the conduct about which she complains affected her career or her pay.  (*Id*. at 639, 648).  In fact, she "consistently exceed[ed] standards" on her appraisal reviews and received merit raises.  (*Id.* at 680-682 & 938).  This is not a situation where "the workplace is permeated with discriminatory intimidation, ridicule, and insult."  *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008).

> [H]arassment constitutes employment discrimination only if "the conduct is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  This "[f]ilters out complaints attacking the ordinary tribulations of the workplace, . . ."

*Corbitt*, *supra* (internal citations omitted).  The conduct about which Cargo complains is simply not so severe or pervasive as to render the workplace objectively hostile or abusive. Based on the foregoing, the court concludes that the defendant's motion for summary judgment on Cargo's hostile work environment claims are due to be granted.

More importantly, however, Cargo has come forward with no evidence to suggest that she was treated differently based on discriminatory animus.  Rather, her allegations rest on hearsay, innuendo, conjecture and supposition.  For example, Cargo complains that the

---

[15] Cargo points to a specific incident involving a dispute over the setting of the thermostat, but she concedes that she "just didn't like the fact that he lied." (Pl's Dep. at 97-103).  She further argues that the grievances filed against her by employees were "part of the plot" to make Cook look good and her look bad. (*Id*. at 108).  However, she suffered no adverse employment action as a result of these disciplinaries.

Board's hiring of William Riggins was discriminatory because the hiring "made Cook look good." (*Id*. at 737-739). Cargo offers no evidence, other than her own speculative opinion, that Cook's actions were motivated by race, gender or age discrimination. In her deposition, Cargo repeatedly concedes that her allegations rest on her *belief* and *opinion* that Cook was motivated by improper discriminatory animus; she points the court to no *facts* that support those beliefs or opinions. (Pl's Dep. at 79, 89, 91, 94, 96, 113, 126-27, 136, 161, 183, 287, 290, 378, 445, 468, 480-81, 652, 716, 719, 722, 723, 727, 728, 730, 782-84, 853, 862). Cargo's self-serving rhetoric, with no attendant facts, is simply insufficient to defeat summary judgment. Her own unsubstantiated opinions and beliefs are not an appropriate proxy for evidence, and she cannot rely on them to demonstrate that Cook's conduct was animated by an improper motive. "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). *See e.g.*, *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (conclusory allegations without specific supporting facts have no probative value); *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989) ("Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment."). The plaintiff has simply failed to come forward with any evidence that she was treated differently because of improper discriminatory motives.

> Title VII does not make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal . . . The law does not require, nor could it ever realistically require, employers to treat all of their employees all of the time in all matters with absolute, antiseptic,

hindsight equality. What the law does require is that an employer not discriminate against an employee on the basis of the employee's protected class characteristics.

*E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1319 (10th Cir. 1992). Based on the foregoing, the court concludes that the defendant's motion for summary judgment is due to be granted.

### IV.  CONCLUSION

Accordingly, it is

ORDERED and ADJUDGED as follows:

1. That the defendant's motion for summary judgment be and is hereby GRANTED;

2. That the plaintiff's claims be and are hereby DISMISSED with prejudice;

3. That all pending deadlines are terminated and all pending motions are hereby DENIED as moot; and

4. That costs of this proceeding be and are hereby taxed against the plaintiff.

A separate judgement will issue.

Done this 26th day of August, 2009.


       /s/Charles S. Coody
       CHARLES S. COODY
       UNITED STATES MAGISTRATE JUDGE